Would both attorneys step up to the podium and identify yourselves for the record, please? Good morning, Your Honors. Tom Orlando for Appellant XL Specialty Insurance Company. Good morning, Your Honors. Stephen Wood appearing on behalf of the Appellee Performance Aircraft. Good morning to both of you. Each of you will have about 15 minutes to present oral argument, and Mr. Orlando, from that, you can save out some time for rebuttal. All right? Thank you. Mr. Wood, you may be seated, and Mr. Orlando, you may proceed. Thank you, Your Honors. I'll save about five minutes for rebuttal. All right. Try to watch the clock. At issue in the case is the application and interpretation of the pilot warranty in the insurance policy that my client issued to PAL. There are two parts to that warranty. The first part is called the Named Pilot Warranty, in which Pilot Nemitz is specifically named. He was the pilot that was the second in command of the aircraft at the time of the accident. The second clause of the pilot warranty we refer to as the Open Pilot Warranty. I think PAL refers to as the Any Pilot Warranty. He is not specifically named. Nemitz is not specifically named in that warranty. In the circuit court, the court addressed both components of the warranty. With respect to the Named Pilot Warranty, the circuit court found that there was a question of fact as to whether or not Nemitz complied with the training requirements applicable or that were set forth in that warranty. Counsel, can I ask you, so what's your interpretation as to annually? So annually, Your Honor, is in the Open Pilot Warranty, and our interpretation is that it means a year. The word annual means a year, obviously, but it's because it's annually and because it's an adverb with the words are going to the school annually. It's something that's in progress. It's continuous. And that on the date the policy incepted in February of 2012, that by saying, by PAL warranting to Excel that these pilots are going annually, that means they were already doing so. That was the warranty that they gave, that this was an ongoing process. So you said the policy was incepted in 2012? This particular policy, it had renewed itself over a number of years. The policy that's at issue at the time of the loss renewed or incepted. Is there a difference? Didn't the trial judge, didn't he interpret this annually as meaning that the pilot could have done the simulated training within that 2012 year? Yes. And that since he hadn't done it thus far, but he still had the opportunity to do it in the 2012 year? Yes. That's circuit court rule that the word annually meant in this particular policy period, which had dates of February 2012 to February of 2013. That's how the circuit court interpreted it. The accident was in June of 2012. And so the circuit court said, well, since the policy hadn't expired, there was still time left on the policy, this warranty could have been complied with because NEMETS could have gone to the simulator school training or school after the accident. So what's unreasonable about that finding? Well, a number of things, Your Honor. First and foremost is the fact that it allows, when you think of the concept of the warranty and what the purpose of it is, it's to ensure that these pilots are properly trained and have ongoing training before they fly an aircraft, not after they fly an aircraft. Well, in this case, it doesn't seem to be a dispute, does it, that this particular pilot, Mr. NEMETS, had not done any simulator training. The last he had done was in 2010. That's right. May 2010. It is undisputed that that was the last time he attended simulator school. Okay. And so there was a policy then in effect in 2011 that would have, according to your interpretation, required that the pilot do this annually, and then in 2012, when it was renewed, it would be a requirement that he would again have done this annually. But because there hadn't been any training since 2010, the provision had not been met. That's correct, Your Honor. The same open pilot warranty that's in the 2012 policy was in the 2011 policy, having the same annual requirement. This was an ongoing thing, an ongoing relationship. Our position would be that on the day this policy, renewed or incepted, became effective, the current policy for the purposes of the laws, when that went into effect in February of 2012, they were already in breach of the warranty, of the open pilot warranty, because already as of that time, 20 months had passed since the last time NEMETS was at the simulator school, and therefore he wasn't going, continuously going. Why is your policy where the insured is already in breach? Well, we didn't know that. Excel did not. So you know it now, or you knew it subsequently. Let me take a step back on that answer, because that's the other. We may have known that, because remember that in this case, there had been a request in 2011 that NEMETS, that the simulator school requirement be removed for NEMETS. Yes. So when the 2011 policy incepted, not only was there this open pilot warranty that talked about a simulator school requirement for any pilots, there was a specific simulator school requirement for NEMETS that said he had to complete it by May 2011. PAL through L.L. Johns, the broker, went to Excel and said, we'd like that to be removed in the 2011 policy, which Excel did, and endorsement number 24 was issued to the 2011 policy that removed the simulator school requirement that was specific to NEMETS. It still had the general one in the open pilot warranty. So I think that going into the 2012 policy term, everybody understood that NEMETS was not going to go to simulator school, which is why we don't understand how this, the open pilot warranty, was even applied to him by the circuit court, because everybody understood he never was going to go to the simulator school. They had asked that that be removed for him. There was a separate requirement for him. Yes. So I think that answers your question on that. Was he in compliance with the cards? Go ahead, Bob. Let me ask you this. You keep referring to this as a warranty. Does the policy call it a warranty? It does. It's called a pilot warranty. Okay. Is that a condition preceding? It is. Now, the circuit court initially ruled that both parts of it was a condition preceding. But here, I'm just trying to lead up to something. Okay. Now, your company knew that he wasn't complying with these provisions as the policy was renewed, did they not? I would say that Excel suspected that he wasn't going to go to the simulator school, but they fully expected that he would do the training, the approved training, within 12 months of every time he piloted an airplane, a different kind of training. In the past, did he? Well, he had done it in the past. I mean, the last time he had been to an official school was May of 2010. Excel did not know when they were at the ñ they actually met in January of 2012. Excel did not know at that point in time that he had not been to any other training. Okay. Going back to the annual requirement and the circuit court's ruling on it, I think Judge McBride, you asked a question about why we think the circuit court's ruling was wrong. There's another aspect of it to me, and it really is common sense, which is thankfully the pilot survived this crash. Everybody on this aircraft survived the crash. That often, of course, does not happen in aircraft disasters. The import of the circuit court's ruling would be that had the pilot died, he would not have been able to fulfill, and PAO would not have been able to fulfill the simulator school requirement after the fact. And so now we're in this bizarre scenario that had the pilot died, they would have been in breach because they would not have been able to fulfill the annual requirement, if annual is interpreted to mean the whole policy period and even after a loss. But for the fact that he happened to survive and could possibly fulfill this requirement, the warranty, well, the circuit court held that the warranty wasn't breached, and that XL cut off PAO's opportunity to comply with the warranty. I'm not sure I'd go along with that, you know, comparing it to if he had died. I just, I don't know if that's the, if you can reach the conclusion you've just. Well, the circuit court did say that he could, this pilot, because he survived. Yes, I know the court said that. I just think that, you know, this other scenario isn't really what we're dealing with, and I'm not sure that I would jump to that same, you know, conclusion, that that's what the court, that the court's finding would result in this other, you know, anomalous kind of reading. Was that part of your argument at the trial level? The argument was made at the trial level that. I mean, with regards to your scenario, that he had died. Yes, that argument was made at the trial level. The other aspect of the open, I think, to put the final answer on your question, Judge, about the open pilot warranty, again, is the fact that it was understood by the parties that this particular pilot wasn't going to go to the simulator school. That's why they had written it out of the named pilot warranty for him in the 2011 policy. And it, therefore, doesn't even make sense to apply this open pilot warranty to Nemitz at all. And so what happened in the circuit court is the judge there saw that the open pilot warranty starts with any pilot approved by the chief pilot. And I don't think there's any dispute that the chief pilot approved Nemitz as a pilot. And so then that begs the question, well, what next? Now, PAL argued in the circuit court, well, that was enough, because he wasn't going to go to the simulator school, because they acknowledged that they had written that out for him, that that ended the inquiry. Because the chief pilot had approved him, that's the end of the inquiry under the open pilot warranty. Now, the circuit court understood that that would gut the open pilot warranty of the actual training requirement. And so the circuit court wouldn't go that far. But what the circuit court then did is, nevertheless, applied the open pilot warranty with its interpretation annually to Nemitz, even understanding factually that he never was going to go to the simulator school. And it just doesn't make sense to apply it to him in that context. I want to touch briefly on the named pilot warranty. Yes. The circuit court, one of the main issues below is whether or not company approved meant Excel. The circuit court, the parties disputed that. The circuit court ruled in Excel's favor that company means Excel. That does not seem to be an issue on appeal. I did not see that they challenged that. Well, isn't it part of their argument that it's kind of illusory? Well, their argument is, I guess it's part of the illusory argument with respect to the actual condition of it. And I don't fully understand that argument because it's the illusory promise argument, which they seem to be applying to Excel that we made a promise that we couldn't keep. Well, the warranty is their promise. The warranty is their promise to Excel that our pilots are under and go certain training. So I would say if there's an illusory promise here, it's on their end, because they really, as it turns out, promised to do nothing. The warranty was that we warrant that he will, Nemitz, will undergo training that you approve every time, within 12 months of every time he flies the aircraft, and then they didn't do that. There was a meeting again held. They were all sitting around a table in January 2012. There is evidence to the record from Excel that the training requirements were discussed. PAL disputes that. But that begs the question, well, why didn't you ask Excel at that meeting, will this work for you? This is what we proposed to do with Nemitz. The chief pilot was at that meeting. The chief pilot could have said, this is what we want to do with Nemitz over the course of the next year. Is that going to be okay? That's all they had to do. They want to turn this around into Excel can deny, can sit on its heels and deny a claim by after the fact defining what an approved program is. No, that's not how it operates. The warranty was in effect the day the policy incepted. They warranted that every time a pilot flew that plane, he had the training 12 months before. Whether or not there was a loss, the duty was on PAL to live up to the terms of that warranty, to figure out what it meant, if they had any confusion. There was no illusory promise by Excel. I'm probably up on my time. Well, anything further you want to add, and we will give you some time for rebuttal. Is there anything you want to close with or wait until your rebuttal? I think I'll wait for rebuttal. All right. Thank you. Mr. Wood, good morning again. Good morning, Your Honors. Steven Wood again, appearing on behalf of Performance Aircraft, the appellee in this case. May it please the Court. There is a jurisdictional objection that we raised in our brief. Would the Court like me to address that, or should I? I think you should focus on the other issues. On the issue of the policy and the construction of the policy? Yes, yes. I'm happy to do that, Your Honor. I think the arguments regarding jurisdiction are probably laid out well in our brief. Yes, I think both parties have addressed that sufficiently. Regarding the pilot warranty, the issue before the Court is whether or not insurance coverage was afforded to Performance Aircraft and whether the conditions of the pilot warranty were met on the date of the loss, June 7, 2012. Yes, if you interpret it annually. Isn't annually kind of the key thing here? Well, it certainly was with the trial court, Your Honor, no question about it. And it was, we believe that it is extremely important here, too. We think there should be coverage under the second-in-command Lear Jet 60 provision of the pilot warranty. There's a section in there that pertains to different types of aircraft. We're concerned with the Lear Jet 60 aircraft provision because that was the aircraft involved in the accident. And that under either the named pilot clause or the anti-pilot clause, coverage should have been extended to Performance Aircraft. Which language are you referring to so I can? Your Honor, it's, the language is, do you want me to cite to a page in the brief? Well, is it the provided that each have successfully completed approved ground? The first part of it is the named pilot clause. Yeah. And it mentions Mr. Policano and Mr. Nemitz specifically. Okay, that's what I'm looking for. Right, right, right. And so because we, they mention, they're mentioned specifically, we call that the named pilot clause. I think Excel calls it the same. The second part of it begins with the words or anti-pilot. And so we call that the anti-pilot clause. It makes sense to us. They've called it an open warranty. But in any event, Your Honor, we think that under either we would qualify for coverage. As far as the annually issue is concerned, the second anti-pilot clause does say that any pilot or any pilot approved by the chief pilot, providing that they are going to simulated school annually. And so Excel first took the position in its brief that that clause could not apply to performance aircrafts, to Mr. Nemitz or Mr. Policano, because they're named specifically in the named pilot clause. And that was not an argument raised in the court below. And so in our brief, we objected to their raising this new argument on appeal, that they shouldn't be allowed to do that, because Judge Valderrama didn't have an opportunity to consider that argument. And there's a petition case law that supports that position. Absolutely. Did Nemitz's training at all comply with the warranty? Well, Your Honor, in answering that question, can I address this issue in the named pilot clause about company? Sure. Because a lot of time and effort was expended in the trial court in discovery, trying to understand what exactly meant by the term company approved ground and flight training. Because company is defined. It is a defined term in the policy with a capital C. And frequently it appears in the policy with a capital C intended to refer to Excel. But there are a couple of instances where company is identified with a lower case C. And in that particular instance, it's company with a lower case C. Now, a global insurance company that is exercising care in drafting, you would expect that they would be consistent from the use of initial capitalizations. And if they use a different form of a defined term, then it might have a different meaning. Consistent with performance aircraft's request for flexibility in qualifying their pilots for coverage, performance aircraft in looking at that language thought perhaps, well, lower case C, this must be intentional. It can't be a Scrivener's error, which is how it was characterized in Excel's brief. This must be intentional. Therefore, a company in this instance must refer to performance aircraft. Consequently, we have the flexibility to decide what that training should be. The answer I'm getting to, Your Honor, is that performance aircraft certainly did. It isn't correct to say that Mr. Nemitz didn't undergo any training. He certainly did undergo training. He didn't go to simulator school since May of 2010. That's correct. But he did undergo training, just not some particular type of training that was spelled out by Excel. And that is another problem, Your Honor. Well, didn't the policy provide he had to go to simulator school? No, not exactly, Your Honor. Let me be more specific in my response. The policy said in the name pilot clause that to qualify for coverage, he would have to complete company-approved ground and flight training. That's what it says. It doesn't say anything about simulator school. That's in the name pilot clause. Right, but the second one. In the second clause, yes. They have each successfully completed company-approved ground and flight training for a turbine aircraft within the preceding 12 months, okay, which you would argue that was done, right? That's the first name pilot clause, right, Your Honor? This is the one Robert Policano called Nemitz. Right, right. Provided that each have successfully completed company- Company-approved ground or flight training, right, within the preceding 12 months. But then for any pilot approved by the chief pilot. Right, correct. Provided. With the understanding. With the understanding, correct. That they go to simulator school. That they are attending simulator school. Are going to. Are going to, correct. Are going to simulator school. And need info. And, well, he hadn't gone by the date of the loss, Your Honor. That's true. Well, it said annually. Isn't annually, it means he has to do it every year? I think it means yearly. Okay, and he never did it until 2010 was the last time he did it. Well, Your Honor, if you're going to look back, all right, and it's an interesting question about what Excel knew about Mr. Nemitz's training. Because if they knew that the school requirement had been requested to be removed from the prior year's policy, they were aware that he hadn't attended simulator school by that period of time. And when this policy was issued in February of 2012, I think it's reasonable to conclude that Excel knew that Mr. Nemitz hadn't attended that training. And yet this antipilot clause was contained in the pilot warranty. Now, if you're going to look back at prior years, my concern about that, Your Honor, is that to bring into play prior year's compliance, or noncompliance, or prior year's conduct is to alter the terms of this policy. And this issue came up in the court below because Excel argued that this antipilot clause was a condition precedent that had to be satisfied before there would be coverage. And Judge Valderrama said, no, this is an annual requirement. It doesn't say it must be completed before the inception of the policy. If that's what Excel meant, it should have said that. And it didn't. So getting back to my first question was in terms of what is the interpretation of annually here. There's no definition in the warranty in regards to what annually is. So what did the parties intend annually to mean? Well, there is no extrinsic evidence in the record, Your Honor, regarding that specific issue. So the trial court in this case applied, I think, a reasonable definition to the word annually, which is yearly, which the year period at issue here was the policy year. Thus, Mr. Nemitz had up until the end of the policy year to complete this requirement. What about counsel's argument that if you take that to the extreme, had this person died, then there would be absolutely no coverage? Well, so I would like to provide some factual context in answering the court's question, and I'll do it quickly. This is a requirement for training for second-in-command pilots, or co-pilots, in other words. These are people who are always going to be flying the aircraft as co-pilots under the supervision of a pilot-in-command. The requirements for training and qualification for coverage for pilots-in-command are certainly going to be more rigorous. All right? These are experienced pilots operating only as second-in-command pilots, and thus they wouldn't have to meet. And I think the language in the pilot warranty supports this. As rigorous a requirement for certification or qualification for coverage as the pilots-in-command. In other words, it was reasonable for Excel to say, we will defer to the judgment of the chief pilot, and any pilot approved by the chief pilot can operate the aircraft and qualify for coverage as long as they attend simulator school. You know, are going to. I interpret that to mean attend. All right? It doesn't mean complete simulator school. At some point during the year, that is a reasonable, relatively low-level requirement for second-in-command pilots who are going to be operating the aircraft under the supervision of a pilot-in-command. I want to say this also, Your Honor. You said that word, though, didn't you? Attend? I said attend because, I'm sorry, it is are going to. Are going to simulator school. That's the specific language, right? I said attend. But it doesn't say complete. No, it doesn't. You're right. It doesn't say complete. So he can come and have a cup of coffee and leave? Is that what you're telling me? Well, what I'm saying is this, Your Honor. I have some personal experience with this, frankly. So attending simulator school on an annual basis could involve less than a day, where the pilot at issue goes to a school, undertakes a brief, flies the simulator for an hour and a half, reviews some emergency procedures, lands, and undertakes a debriefing. He's out of the cockpit for less than a day. But a school, a course of instruction, even if it's a refresher course, is going to take a week probably or more. So they're very different requirements, completing school and attending school. I don't know that I'd go so far as to say having a cup of coffee meets the requirement. But you know in any contract, there's always an implied provision of good faith. That's correct. And good faith would mean that you can't go in for a cup of coffee. You'd have to, when you're supposed to attend a school, you attend a school. I'm not going to argue with you, Your Honor. Yeah. But what I would say is this, because there's no deadline other than the end of a year, and the trial court thought that was the end of the policy year, because there's no deadline, it wasn't necessary for Mr. Nemitz to have completed or, sorry, have gone to simulator school. Does it matter that the year before he hadn't gone to simulator school? No. I think it's irrelevant. Why not? I think it's irrelevant, Your Honor, because to look at that is to buy into this argument that Excel is making, this condition precedent argument. They're not calling it that, but that's what they called it in the trial court. And I think Judge Valderrama correctly said that part of it cannot be a condition precedent, because if you're going to say this has to be met, counsel for Excel argued that we were in breach on the day this policy incepted, and it cannot be correct, because if you take that position, you've rewritten the terms of this policy. You have rewritten it in favor of the insurance company, which I think is also contrary to Illinois law, which requires these policies to be construed in favor of coverage. Can we go back to a second part? You referred to it as attempt, but in the clauses that are issued here, was there ever any request for approval of a training program or any type of specific training program other than just calling it a simulator program that would require that limits to be in compliance with? So, I'm sorry, Your Honor, was there a request made by Performance Aircraft of Excel to approve? No. Not that I'm aware of. I don't think there's any evidence in the record to that effect. So, I wanted to make sure that I addressed this issue. I think it is incorrect to assume that there's no coverage until the simulator attendant or going to simulator school requirement is met. And let me give you this example. So, are you saying there's no condition preceding? No, there is a condition preceding, certainly. You've got to be approved by the chief pilot. It's due over the year. It didn't have to be met before the accident. Correct, correct. The deadline was the end of the year, Your Honor. And certainly, there was also a requirement to be approved by the chief pilot. This pilot warranty as drafted demonstrates deference to the judgment of the chief pilot. But what I wanted to say was this. The prior year's policy originally had a deadline for Mr. Nemitz to go to simulator school of May 1, 2011. Now, that was removed, but there was that deadline. If he hadn't completed or attended simulator school by May 1, 2011, then he was going to be removed from the policy. Now, if an accident had occurred prior to that deadline, before he had attended school, let's just say it was March 1st of that year. There would have been coverage. Exactly, Your Honor. Excel would not have taken the position then, well, wait a minute. He hasn't gone to simulator school yet. Well, that's because he had until that deadline to complete simulator school or to attend simulator school. It's the same with this policy. He had until the end of that year, under the unambiguous terms of the antipilot clause, to attend simulator school. Judge Valderrama, in his denial of their motion to reconsider, Excel's motion to reconsider, I think from my point of view, regrettably responded to this argument that they made, that he had to have completed this simulator requirement before he could be covered for this loss. My position then and now is that on the date of the loss, he was approved by the chief pilot, and those were the only extant co-wait requirements in effect on that day, and there was coverage. All right. Anything further? No. Thank you, Your Honor. I appreciate your time this morning. Mr. Orlando. Thank you, Your Honors. Again, Tom Orlando for appellate. Briefly, I just want to address one fact. Is it your position that under the PIC that they did not meet the requirements? I'm sorry, under the? The one that says Todd Chilton, Dan Grannis, Ed Wachs, or any pilot approved by the chief pilot. That's the open pilot one? The open pilot. Yes. Provided each have successfully completed company approved. It's your position they did not establish that? So that's the main pilot with the first clause. Okay. Yes. The first clause, it's our position they did not meet it because it was Excel approved and he didn't undergo any Excel approved training. The circuit court found a question of fact on that, but there's nothing in the record that even suggests that he complied with that, and counsel just stated that he wasn't even aware that PL had gone to Excel to find out what those requirements would be. One fact I just want to bring up. It's true that Nemitz was the second in command, and counsel made an argument that because he was the second in command that the training requirements may be less for them as second in command, but I think it's important. In this case, he was in Nemitz. Although the second in command had control of the aircraft, he was in the captain's chair for this flight. So while technically he was the second in command, and the first in command or the pilot in command was in the aircraft, but Nemitz was flying this airplane in the captain's chair, and he hadn't been to the simulator school since May 2010. Obviously, there's a lot of focus I can tell on the word annually, and counsel did something interesting that I want to break down. Well, I mean, it seems to me you're both saying it's unambiguous, and yet both of you have a different interpretation of this term. The trial judge said it was unambiguous? I believe so. What do you do when there is something that is ambiguous in an insurance policy? Well, when you have, in this case, when it's negotiated as this was, and you have a record of the negotiations on this very point, you can look to that extrinsic evidence to determine what the party's intended, and here we know what they intended. Well, isn't there, though, there's this general principle out there that if a term is ambiguous and that there's two reasonable interpretations, that the courts are required to interpret it in favor of the insured as opposed to the insurer? That rule exists if it's boilerplate and most usually in the consumer context where it's take it or leave it and it's an insurance policy that it's the same form that gets used all the time, and it's not negotiated with the policyholder. That doesn't always hold true, and it's a fallback provision. It's really the last resort in contract interpretation, and particularly of an insurance policy, but where you do have an insurance broker involved, you have a commercial entity. It's negotiated, and they were negotiating this very language. You can certainly look. The court can certainly look at the extrinsic evidence, and a jury could, too, to determine what the party's intended. And to use counsel's example when he talked about the May 2011 deadline that was in the previous policy. So let's go back and look at this. It's undisputed that Nemitz last went to a simulator school in May of 2010. In the 2011 policy, it was written into the policy that he had to complete it by May 2011 annually, the next year, within the year of the last time he did it. Well, they didn't want him to go to the simulator school. They didn't want to send him, so they went to Excel, and they said, can we remove that specific requirement for Nemitz, that he go to the simulator school? And Excel said, yes, because we have this other requirement for him in the first clause. So while the example is correct, that had the accident occurred, if we go back in time, before May 2011, had it happened in March 2011, he would have been in compliance because he had gone in May of 2010. He was supposed to go within a year by May 2011. He would have gone on an annual basis. And so what counsel said was annually means yearly. Okay, I agree. But what does that mean? The leap that counsel and PAL and the circuit court took was that means calendar year. Well, no, not necessarily. Annually just means in a cycle of 12 months. If you go to a doctor's appointment, if I go to the doctor's appointment today and the doctor says, I want to see you annually, that doesn't mean the end of this calendar year. It means by next June 13. That's what annually means in that context. What this provision says is are going to the school annually. You have to interpret those words together, not annually in the abstract. Are going to means ongoing. Well, getting back to your issue about the intent, if originally there was going to be a by when date and then that's removed, doesn't that imply that there was an intent by the parties to say, okay, it could be a calendar year instead of a specific provision year? Well, our position is it means that the second part of the warranty, the open pilot warranty or any pilot warranty, was no longer, was never intended to apply to NEMEX. And remember that that May 2011 date, that was in the named pilot warranty. There always was this any pilot or open pilot warranty. And so our position is it never was intended to apply to NEMEX because he always had his own specific warranty. And now you've taken out the simulator school requirement for him, how does this open pilot warranty, how could it even apply to him? The parties conceded he wasn't going to go to the simulator school. It really doesn't make sense. I know there's an argument we've waived that argument, but I would say all of that was before the circuit court because the circuit court first addressed whether or not the open pilot warranty could apply by saying, well, the first part of it is pilots approved by the chief pilot. So that was the entree into the open pilot warranty. Yet the parties conceded on the record that the simulator school requirement had been removed for NEMEX, so how could he comply with that requirement? And we're simply saying now the natural extension of everything that was argued in the circuit court, the facts and the law, establishes that the open pilot warranty was not intended to apply to him because he wasn't going to go. He had his own specific warranty. You know, Webster's Dictionary defines annually as once a year or each year. Are you aware of that? Yes. Anything further, Mr. Orlando? No, thank you. All right. The case was very well-argued and well-produced by both sides. We will take it under advisement. Thank you.